## A. G. WALKER AND OTHERS V. TARRANT COUNTY.

The location and removal of county seats pertain to the legislative department; if that department acts directly, no judicial question can be made as to the propriety or validity of its action; and if it acts through the medium of officers or agents, no judicial question can be made as to the propriety or validity of the acts of the officers or agents, unless the Legislature make special provision therefor.

It would seem that where a county seat is removed, the county will not be enjoined from selling unsold lots, at the suit of the donor who gave the land to the county on condition of the location of the county seat thereon.

Appeal from Tarrant. Tried below before the Hon. Nat. M. Burford.

Petition filed Nov. 20th, 1856, as follows:—

The petition of George Akers, A. G. Walker, John R. Wallace and James H. Hughes as plaintiffs, all resident citizens of the County of Tarrant, and State of Texas, would respectfully show unto your Honor that on the first Tuesday in November, A. D. 1856, there was an election held at the various precincts in the County of Tarrant, and State of Texas, "to locate the county seat of said county," by order of the Chief Justice, previously made, at which election the town of Birdville, the then county seat of said county, and which said town is within less than five miles of the centre of said county, and the town of Fort Worth were voted for as such county seats; said plaintiffs charge that on that day at said election, at the various precincts in said county, the town of Birdville did receive a majority of all the legal and qualified votes of the legal and qualified voters given in said election for the seat of justice of said county, as they are informed and verily believe, receiving 317 votes. They state and charge that the town of Fort Worth was fraudulently and unlawfully declared by the Chief Justice of said Tarrant County to be elected and to be the county seat of said county, when in fact and in truth, by the legal returns of the votes cast in said election, the returns of which were made to the Chief Justice and County Clerk of said county, before the tenth day

after the day of holding said election, only amounted to 312, leaving 5 of a majority for Birdville.

Said plaintiffs charge that on the 14th day of November, A. D. 1856, the same being the return day by law, or the day upon which said election should be declared, on that day the Chief Justice of said county fraudulently received the poll books from precinct No. 9 of said county, by which said fraudulent act of said Chief Justice the town of Fort Worth received from said precinct a majority of twenty-seven votes, when indeed and in truth there was no return from said precinct, as required by law, certified to by the presiding officer, judges and clerks of said election at said precinct, as required by law. They further say that on the day of said election at said precinct No. 9, one B. F. Barkley acted as one of the clerks of said election, when said Barkley was not a qualified voter in said county, which said act was in direct contravention of the law in that case made and provided, passed by the Legislature of the State of Texas, August the 25th, A. D. 1856. They further state that on the day of said election at said precinct one John Picket, a Justice of the Peace, administered the oath of office to the presiding officer, judges and clerks of said election, contrary to the statute provided in such cases. They charge that on the day of said election the following named persons cast their votes in said election who were not qualified voters as by law required, to wit : (Here followed thirty-nine names,) none of whom were qualified voters, and all of whom voted for Fort Worth, and some of whom voted twice at said election. And your petitioners believe there were many others voted on said day in said election who were not qualified electors and who voted for Fort Worth, and whose names plaintiffs pray may be inserted in this petition when ascertained.

Plaintiffs charge that at precinct No. 6, in said county, one —— Gibson, who was not a qualified voter in said county, acted as manager in said election ; and said plaintiffs charge that at Johnson's Station, precinct No. —, one —— Gearon acted as one of the officers in said election, who was not a legal voter in said county. Wherefore said plaintiffs aver and charge, for the above stated reasons, that said election of Fort Worth was unlawful, fraudulent and void, and they pray that the same may be set aside as void and without effect. Plaintiffs charge that Birdville was, in the year A. D. 1850, duly elected by the qualified voters of said county the county site of said county, and that the same is situated within five miles of the centre of said county,

2

and has been ever since the county seat of said county, and that eighty acres of land was donated to said town; forty acres by George Akers, and 40 acres by William Noris, now dead, upon which donations of land the town of Birdville is situated. Plaintiffs charge that there are about 325 town lots on said donation of land now unsold, the title to which is in the county of Tarrant, having been conveyed by the donors for the purpose of making it the county seat of said county. Petitioners pray that said unsold lands and lots on said Akers' donation, in the event that said election of Fort Worth shall not be set aside, be decreed to and the title vested in the said George Akers, and the unsold portion of said Noris, deceased, be reconveyed to the heirs of said Noris when ascertained, and that said heirs be made co-plaintiffs in this petition. They charge that the act of the Legislature of the State of Texas, approved August the 25th, A. D. 1856, authorizing the Chief Justice of Tarrant county to order an election to locate the county site of Tarrant county, is in direct contravention of the law regulating the removal of county seats, and is oppressive and unconstitutional. Petitioners further charge that Birdville is located as near the geographical centre of said county as the town of Fort Worth, that the west fork of Trinity river runs near diagonally through the centre of said county, and that a majority of the legal voters of said county are more conveniently situated to attend to the public duties as citizens at Birdville than they would be were Fort Worth declared to be the county seat, and that already the county of Tarrant has contracted for the building a court-house in the town of Birdville, at a cost of eight thousand five hundred dollars, and that under said contract the contractors have procured much of the material for said building, and said county is legally bound to pay said amount to said contractors, by a bond on record in said county, which bond is on record in County Court of said county, which is made evidence in this cause in the trial thereof. Petitioners further charge that, trusting and relying on the good faith and credit of said county, they made the donations of land referred to for the purpose above stated, and have made large and valuable improvements on said town site in good faith, amounting in the aggregate to the sum of twenty-five thousand dollars, and by petitioners personally to the amount of ten thousand dollars. Wherefore they say, by the said acts above complained of, and the fraudulent conduct of said Chief Justice, they will be damaged ten thousand dollars by the removal of said

Walker v. Tarrant County.

county site from Birdville. They therefore pray that the county of Tarrant be made a party defendant herein; and they further pray that writs of injunction be issued by your Honor restraining said county from removing the offices, papers, records and public archives of said county from the town of Birdville. They further pray oyer of the returns of said election, tickets, &c., which are in the possession of defendants. That defendants have notice, &c., for their said damage and costs of suit in this behalf expended, and for such other and further relief as in justice and right they may be entitled, and that the county be restrained from any further proceedings or disposition of the unsold lots in said town of Birdville, and for all such relief as is just in the premises.

Plaintiffs filed an amendment as follows:—

Plaintiffs charge that the town of Birdville, at the elections held in said county, as stated in their original petition, did receive a majority of all the legal votes cast at said election, and was duly elected the county seat of said county of Tarrant; and the following named persons, who were at the time of casting their votes not qualified electors in the county of Tarrant, voted for Fort Worth, to wit: (Here followed a list of seventy-two names, including those in the original petition.) Plaintiffs pray that all the foregoing named illegal votes may be deducted from the number of votes cast and counted for Fort Worth; and if such number so taken from the Fort Worth vote, below a majority or a less number than was cast for Birdville, then and in that case plaintiffs pray that the town of Birdville shall be decreed by the Court to be the county seat of Tarrant county, and may make all such other orders and decrees as may be necessary to carry said decree into effect, and as in duty bound they will ever pray.

Plaintiffs filed a second amendment as follows:—

That plaintiffs are qualified voters or electors in the county of Tarrant, and State of Texas, and that by the fraudulent conduct of said county, by the action of the Chief Justice thereof, in receiving illegally the returns of precincts mentioned in original petition, and in counting the votes of the persons mentioned in original petition as illegal or unqualified voters, they have been deprived of their highest privilege as citizens of the county, to wit, of having the sacred precincts of the elective franchise invaded, and their votes destroyed by the votes of the named unqualified voters. Petitioners distinctly and positively charge fraud and oppression by defendants, as above stated, and as in

their original petition they pray that the said action of said Chief Justice, in declaring the town of Fort Worth elected, be regarded and decreed to be null and void; that said election for county seat, mentioned in original petition, be held for naught and of no avail; and that the town of Birdville be decreed to be the county seat of said county of Tarrant; and that, by an order of this Court, the county books, records and archives be remanded to the town of Birdville, and for such other and further relief as in justice and equity is right, and as in duty, &c.

A preliminary injunction was granted to restrain the sale of unsold town lots in the town of Birdville, donated to the county of Tarrant by George Akers; but was refused as to the removal of the county seat.

The county of Tarrant filed a demurrer and answer. The Court sustained the demurrer and dismissed the suit.

*J. J. Good*, for appellee. That the judgment of the District Court was correct is a point too well settled by the adjudications of this Court to admit of argument. (Baker et al. v. Chisholm, 3 Tex. R. 157; Arberry v. Beavers, 6 Id. 457; Alley v. Denison, 8 Id. 297.)

ROBERTS, J. This is an action brought by a portion of the citizens of Tarrant county against their county, to test the legality of an election held to fix the location of the county seat, to prevent the removal of the records from Birdville to Fort Worth, and to restrain the sale of lots in the town of Birdville; and, if the county seat should be determined to be at Fort Worth, to reinvest the original donors of the land with the title to the unsold lots.

The act of determining in what particular place in a county the Courts shall be held, and the public records shall be kept, is the exercise of a political authority of the government, pertaining to the Legislature. It may be done directly, as by naming and identifying a place in the Act; or it may be done indirectly, by making it depend upon a contingency, and appointing an agent or agents to determine upon that contingency, and to announce the result. Whether it be done the one way or the other, it, in all its parts, is no less an act pertaining to the political and not to the judicial authority. The Legislature has the power to cause the place to be determined by one contingency as well as another

—by the locality of the numerical population, of the property, of the tillable lands or good water, as well as by the qualified voters. If the agents which the Legislature may employ do not correctly perform what is required of them, in determining any such contingency upon which it may be made to depend, the department for complaint and redress is the Legislature that has employed such agent to perform its functions.

No citizen of a county has a vested right in the locality of the county seat by living in it, or near it, or by living in the county. If it were so, neither a majority of the county nor the Legislature could remove it after it was once located. (Alley v. Denison, 8 Tex. R. 297.) All the questions presented in this case have been adjudicated by this Court in a way to determine it against the plaintiffs. (See Arberry v. Beavers, 6 Tex. R. 457; Baker v. Chisholm, 3 Id. 157; Alley v. Denison, 8 Id. 297.) The judgment below is affirmed.

Judgment affirmed.