# SUPREME COURT OF TEXAS.

## TYLER TERM, 1869.

-----

### S. K. McClelland and others v. Shelby County.

1—The powers conferred on the Chief Justices of Counties by Articles 1067 and 1068 of Paschal's Digest, relating to the removal of county seats, are political in their character, and not judicial; and hence, any complaints arising out of the action of those officials, in the exercise of such powers, were cognizable by the political authority of the State, and not by the courts.

2—The case of Walker v. Tarrant County, 20 Texas, 16, to the same effect, cited and approved.

3—See the opinion with reference to the transmutations of political authority in Texas, in consequence of the Act of Secession and the ensuing hostilities.

4—During the incumbency of Provisional Governor Hamilton, from July 25th, 1865, to August 20th, 1866, he represented the Executive Department and the war power of the United States, and was vested with the powers of a conqueror over the conquered in Texas. Therefore, what he, during that period, declared to be law was law, being "prescribed by the supreme power in the State."

5—The proclamation of Governor Hamilton of July 25th, 1865, had more of a legislative than of an executive or judicial character.

6—By Section 6 of that proclamation it was declared that the general laws and statutes in force immediately preceding the 1st of February, 1861, were to be respected and enforced. Among those general laws was the statute of May 9th, 1838, comprising Articles 1067 and 1068, above referred to.

7—The Legislative power was not in abeyance in Texas during the Provisional Government. It resided in the military authorities of the United States.

8—*Held*, that this court has no jurisdiction of the subject matter of this suit.

XXXII—1

Appeal from Shelby.   Tried below before the Hon. J. B. Williamson.

On exceptions of the defendant for want of jurisdiction, the suit was dismissed by the court below.   The character of the proceeding and the facts are sufficiently indicated in the opinion of the court.

*R. S. Walker* and *T. W. Jones,* for the appellants.

*Parsons & Jones* and *M. W. Wheeler,* for the appellee.

Morrill, C. J.—This is a suit to nullify the removal of the county seat of the county of Shelby from Shelbyville to Centre, in January, 1866.

The plaintiffs base their cause of action on the allegations, that the Chief Justice, being the appointee of Provisional Governor Hamilton, had no power to order the election as provided by the statutes.   (Paschal, Arts. 1067, 1068.)

They insist that his powers were judicial, and not political. That, as all the political powers of Texas were, at the time specified, and are now, in abeyance, and that the Chief Justice in ordering the election acted politically and not judicially, his acts were null.   It is assumed by plaintiffs and admitted by them, that the judiciary have no other jurisdiction than to declare the actings and doings of the Chief Justice null and void—not because there was irregularity or illegality in the election, but because he had no power to order the election.

The Chief Justice excepts to the sufficiency of the petition.

The questions really proposed for our adjudication are, first: Was the act of the Chief Justice in ordering the election in January, 1866, a political act? and if so, second: Did he possess the political power so to act?

As before stated, it is conceded that the decisions of this court in Walker v. Tarrant County, 20 Tex., 20, and the cases there

cited, do not leave this an open question, and it hence follows that all appeals from the said acts of the Chief Justice are returnable before the political and not before the judicial power. The second proposition, relative to existence or non-existence of the political power in the Chief Justice to do and perform the act referred to, next demands our attention.

It is admitted that from and after the passage of the Act of Secession, till the close of the war in Texas, that there was an actual or constructive hostility existing between Texas and the United States; and that the insurrection was proclaimed to be at an end, by the President of the United States, on the 20th of August, 1866. It is also known as a historical fact, that on the 19th of June, 1865, the military department of the United States took and held complete control in Texas, and on the 25th of July, 1865, A. J. Hamilton assumed control of Texas as Provisional Governor.

Representing in his person the Executive Department of the United States, from the 25th of July, 1865, till the 20th of August, 1866, Governor Hamilton was vested with the power of the commander-in-chief of a conqueror over the conquered in Texas during that time. And it hence follows, that whatever he declared was, for the time being, law, being "prescribed by the supreme power in the State."

The proclamation made by Governor Hamilton at the city of Galveston, on the 25th of July, 1865, had more of a legislative than executive or judicial character. The section 6 declared what laws would be in force and what repealed or annulled. In fact, the Provisional Governor assumed and exercised legistive power, as the following quotations will show:

"There being no civil officers in the State, and the great body of the people laboring under such disabilities at this time as to preclude election, therefore, such State, district and county officers will be appointed as may be indispensable to the convenience and well-being of the people, the enforcement of the

law, and the efficiency of the Provisional State Government during its existence."

"The general laws and statutes of the State in force immediately preceding the 1st of February, 1861, are to be respected and enforced."

Among the general laws passed previous to 1861, was the act of 9th of May, 1838—Arts. 1067, 1068—now under consideration. After Governor Hamilton ceased to be the Provisional Governor by the accession of Governor Throckmorton, and the organization of the State Government in 1866, the Legislature of the State was in session from the 6th day of August, 1866, to the 13th of November, of the same year. And surely an application could have been made to this political body for relief during this time.

But it is particularly insisted that since the Congress of the United States, by the act of 20th of March, 1867, declared that "no legal State government or adequate protection for life or property existed in Texas, * * * and that the civil government in existence was provisional only, and in all respects subject to the paramount authority of the United States at any time to abolish, modify, control or supercede the same," that it necessarily follows that there is no political power.

We can not assent to this inference from the premises.

The orders issued by the commander of the Fifth Military District show that they exercised legislative power, and that this power was as full, ample and complete as if it were exercised by a Senate and House of Representatives. The power exists, but the exercise of this power is by a different body, but it is still exercised by the "supreme power in the State, commanding what is right and prohibiting what is wrong," or assuming so to do. And what is still more, this political power is not of few months' duration biennially, but like the executive, continuous, and always accessible.

We, therefore, conclude that the law-making, legislative, or political power was not in abeyance when the election for the

county site of Shelby was held, or has been so at any time since then; and that, agreeably to the former decisions of this court, we have no jurisdiction of the subject matter, and affirm the judgment of the District Court.

Affirmed.